UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EUCEBIO TORRES,<br><br>         Plaintiff,<br><br>v.<br><br>OFFICER G. PAREDES et al.,<br><br>         Defendants. | Case No.: 3:22-cv-0448-JES-DTF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT**<br><br>**[ECF No. 55]** |

Plaintiff Eucebio Torres ("Plaintiff"), a former inmate previously housed at Centinela State Prison ("CDCR-CEN"), filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging that Defendants violated the Eight Amendment, as well as California Civil Code § 52.1 ("Bane Act"), when they were deliberately indifferent to violence in the Non-Designated Minimum Support Facility ("MSF" or "Facility E") Torres was transferred to, resulting in significant physical harm to Torres. *See* generally ECF No. 1.

Before the Court is Defendants' Motion for Summary Judgment ("Motion"). *See* ECF No. 55. Plaintiff filed an Opposition to Defendants' Motion, ("Opp'n," ECF No. 62), and Defendants filed a Reply, ("Reply," ECF No. 64). The Court held oral arguments on August 21, 2024.

//

Having reviewed the Parties' submissions and the applicable law, the Court **GRANTS** in part and **DENIES** in part Defendants' Motion.

## I. BACKGROUND

### A. Procedural Background

On April 5, 2022, Plaintiff filed a Complaint under 42 U.S.C. § 1983 alleging Defendants violated his Eighth Amendment rights by ignoring violence throughout the MSF, deliberately placing him in a dangerous situation, and failing to prevent harm, causing Plaintiff physical and emotional injury. ECF No. 1 at ¶¶ 51-57. On June 28, 2022, Plaintiff filed a First Amended Complaint ("FAC"), and Defendants filed a motion to dismiss the FAC (ECF No. 17). On March 20, 2023, the case was transferred to this Court. ECF No. 22. On June 6, 2023, the Court granted in part and denied in part Defendants' motion to dismiss the FAC. ECF No. 24. On November 27, 2023, Plaintiff filed a Second Amended Complaint ("SAC") alleging causes of action against Defendants G. Paredes ("Paredes"), M. Marrs ("Marrs"), A. Acevedo ("Acevedo"), C. Valencia ("Valencia"), Y. Castillo ("Castillo"), T. Carranza ("Carranza") (collectively "Defendants"). ECF No. 40. On June 24, 2024, Defendants moved for summary judgment. On August 21, 2024, the Court heard oral arguments.

### B. Plaintiff's Allegations

On October 29, 2020, Plaintiff and two other CDCR-CEN inmates were transferred from the general population program ("Facility A") to Facility E. SAC ¶ 24. During their transfer, the three men were informed of program expectations and one of the transporting officers allegedly asked, "are you guys going to win the fight?" *Id*. at ¶¶ 27-28. Further, the officers allegedly told them they needed to "make the general population look good," and if the men won their fights, "general population will be down by one fight." *Id*. at ¶ 29.

//
//
//
//

After processing, Plaintiff and the other two inmates were individually escorted to a Facility E dorm. *Id.* at ¶¶ 30-31. Plaintiff alleges that Marrs[1] escorted him to Facility E and told him that "he had to come through with a win." *Id.* at ¶ 32. Plaintiff alleges Paredes was present when he entered the Facility E dorm and spoke with Marrs before the altercation began. *Id.* at ¶ 34.

Upon entering the dorm, Plaintiff saw a group of four male inmates in a circle, shirtless and wearing hand wraps. *Id.* at ¶ 35. One inmate, Ballez, yelled at Plaintiff and punched him in the head. *Id.* at ¶ 36. A second inmate also hit him. *Id.* Plaintiff then fell to the floor and tried to protect himself. *Id.* Paredes and Marrs watched the incident but did not attempt to intervene. *Id.* at ¶ 37. Plaintiff was examined at the prison medical facility, then taken to the CDCR-CEN clinic, and was ultimately transferred to the University of California San Diego hospital. *Id.* at ¶ 38. Plaintiff was hospitalized for two days and suffered several injuries that required medical procedures. *Id.* at ¶ 39. Upon release from the hospital, Plaintiff was returned to CDCR-CEN. *Id.*

Plaintiff alleges Paredes and Marrs submitted fabricated rule violation reports accusing him of battery against inmate Ballez. *Id.* at ¶ 40. Plaintiff alleges Acevedo also submitted a shift report falsely accusing Plaintiff of battery against inmate Ballez. *Id.* Valencia approved Paredes's report, and Carranza classified it. *Id.* at ¶¶ 41-42. Plaintiff further alleges Carranza and Castillo "failed to conduct an unbiased investigation," and "simply signed off on the [reports] that were presented to them." *Id.* at ¶ 42. As a result of the reports, Plaintiff was placed in solitary confinement and lost 90 days of good time credit. *Id.* at ¶ 43. Plaintiff's incarceration was extended from September 2021 to December 2021, when he was released. *Id.*

In his first cause of action, Plaintiff alleges Acevedo, Marrs, Paredes, and Doe 3 through Doe 10 acted jointly to deprive him of his Eighth Amendment rights by placing

---

[1] Plaintiff offers inconsistent accounts of which officer escorted him to Facility E. In the SAC, Plaintiff alleges it was Marrs. SAC at ¶ 32. In his Opposition, Plaintiff alleges it was Paredes. Opp'n at 17.

him in harm's way, facilitating the attacks on him, failing to intervene, and being deliberately indifferent to violence in Facility E. *Id*. at ¶¶ 62-65. In his second cause of action, Plaintiff alleges Acevedo, Carranza, Castillo, Valencia, and Doe 3 through Doe 10 deprived him of his Eighth Amendment rights under supervisor liability by condoning excessive force, improperly training officers, and inadequately enforcing CDCR regulations. *Id*. at ¶¶ 71-72. Plaintiff's third cause of action was jointly dismissed. ECF No. 54. In his fourth cause of action, Plaintiff alleges Acevedo, Marrs, Paredes, and Doe 3 through Doe 10 violated the Bane Act. SAC at ¶¶ 90-94.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The initial burden of establishing the absence of any genuine issues of material fact falls on the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322–23. In such cases, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

Once the moving party has satisfied its initial burden, the nonmoving party cannot rest on the mere allegations or denials of its pleading. *Id.* at 322 n.3. The nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. The nonmoving party may meet this requirement by presenting evidence from which a reasonable jury could find in its favor, viewing the record

as a whole, in light of the evidentiary burden the law places on that party. *See Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221–22 (9th Cir. 1995). In determining whether there are any genuine issues of material fact, the court must "view[] the evidence in the light most favorable to the nonmoving party." *Fontana v. Haskin*, 262 F.3d 871, 876 (9th Cir. 2001) (citations omitted).

## III. DISCUSSION

In their Motion, Defendants argue they are entitled to summary judgment because (1) the evidence does not establish that Acevedo, Marrs, and Paredes were deliberately indifferent to Plaintiff's safety in violation of the Eighth Amendment; (2) there is no evidence to support Plaintiff's Eighth Amendment supervisor liability claim against Acevedo, Carranza, Castillo, and Valencia; (3) Acevedo, Marrs, and Paredes did not violate the Bane Act; and (4) even if there are triable issues regarding Plaintiff's Eighth Amendment claims, Defendants are entitled to qualified immunity. The Court addresses these arguments in turn.

### A. Deliberate Indifference

The Eighth Amendment requires prison officials to protect inmates from violence caused by other prisoners. *Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir. 2015) (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). A prison official violates this duty when (1) objectively, their act or omission creates a substantial risk of serious harm, and (2) the official is deliberately indifferent to that risk. *Id*. The test for deliberate indifference under the Eighth Amendment mirrors subjective recklessness as used in criminal law. *Farmer*, 511 U.S. at 839-40. Deliberate indifference occurs when "the official is subjectively aware of a substantial risk of serious harm to an inmate and disregards that risk by failing to respond reasonably." *Wilk v. Neven*, 956 F.3d 1143, 1147 (9th Cir. 2020) (citations omitted). Deliberate indifference "entails something more than mere negligence," but can be satisfied by something less than purposeful harm or knowledge that harm will result. *Farmer*, 511 U.S. at 835. Stated differently, deliberate indifference does not require a prison official to "believe to a moral certainty that one inmate intends to attack another,"

but, "[the official] must have more than a mere suspicion that an attack will occur." *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986) (internal quotation marks and citations omitted).

Determining if a prison official was subjectively aware of the substantial risk is a question of fact to be proven "in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842. If the substantial risk was obvious, or if the official was exposed to evidence that the substantial risk of inmate attacks was longstanding or well-documented, then a factfinder could sufficiently determine that the official was subjectively aware. *Id*. at 842-43. However, even if the official should have been aware of the risk but was not, there is no Eighth Amendment violation, no matter how severe the risk. *Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (citations omitted). Further, prison officials who act or respond reasonably are not liable under the Eighth Amendment, even if they knew of the substantial risk, and even if harm ultimately occurred. *Farmer*, 511 U.S. at 844-45.

Plaintiff alleges "Defendants [Acevedo, Marrs, and Paredes] were deliberately indifferent to the violence in the MSF and failed to prevent harm to Plaintiff." SAC ¶ 65. Further, Plaintiff alleges Defendants "were subjectively aware of the risk of violence during the transfer of inmates from Facility [A] to Facility E," and this risk was "common knowledge in the E Yard." Opp'n at 9. Defendants dispute these allegations in their motion. Mot. at 17-20.

Defendants argue Plaintiff did not have safety concerns when entering Facility E, a factor that cuts against deliberate indifference. Mot. at 16. Plaintiff disputes this, alleging he had "significant safety concerns about the proposed transfer," which he shared with Classification Committee counselors prior to his transfer to Facility E. Opp'n at 11. The parties do not dispute that "[o]n the day of the incident, Plaintiff did not tell the correctional officers in Facility E that he had safety concerns." *Id*. Plaintiff also admitted in his deposition, "I didn't have no safety concerns." Torres Depo. at 93:24-25, ECF No. 62-11, Ex. 9. Even if the Court assumes he shared safety concerns with counselors prior to his

transfer, Plaintiff offers no evidence that Acevedo, Marrs, and Paredes were made aware of those concerns.

Acevedo was the acting sergeant in Facility E during the shift Plaintiff's altercation occurred. ECF No. 62-3, Ex. 1. Plaintiff alleges "Acevedo was observed by inmates in Facility E during inmate fights," thus disproving Acevedo's claim that he was unaware of inmate violence during transfers from Facility A to Facility E. Opp'n at 12-13. As evidence, Plaintiff proffers the testimony of Andre Wallace, a former CDCR-CEN inmate familiar with Acevedo. Wallace Depo. at 68:7-15, ECF No. 62-9, Ex. 7. However, when asked how many fights he saw Acevedo present for, Wallace answered, "for sure one." *Id*. at 69:1-3. Plaintiff also attempts to use Acevedo's testimony for the proposition that there were estimated to be around fifteen fights in the six months prior to October 29, 2020. Opp'n at 13. However, Acevedo clarified that his estimations were of incidents, not necessarily fights. Acevedo Depo. at 142:6-19, ECF No. 64-4, Ex. G. When asked about those incidents, he stated, "I wouldn't know," and "I wasn't there." *Id*. Lastly, Plaintiff speculates Acevedo "should have taken additional measures to ensure Plaintiff's safety," based on Acevedo's knowledge of a fight that occurred with inmate Charles Neal, one of the two other men transferred at the same time as Plaintiff. Opp'n at 13. However, Acevedo testified that while he knew of the Neal fight, the other inmate transferred at the same time as Plaintiff was not involved in an altercation during the transfer process. Acevedo Depo. at 73:14-19, ECF No. 55-7, Ex. B. Plaintiff offers no additional evidence regarding Acevedo's knowledge of inmate violence during transfers from Facility A to Facility E.

Marrs was a security patrol officer during the shift Plaintiff's altercation occurred. Opp'n at 14. Plaintiff alleges when he arrived to Facility E, an officer gave a speech about program expectations and referenced a "welcoming committee." *Id*. Plaintiff alleges the officer who gave the speech was an "older white man," and based on this description, conclusively states "the officer in question was Matthew Marrs." However, Plaintiff's testimony was speculative, as he could not state the name of the officer nor the officer's approximate age. Torres Depo. at 91:5-7; 92:9-24, ECF No. 62-11, Ex. 9. Plaintiff stated,

1  "I'm thinking he's white, but then again," and "[h]e might have been an older, white man."
2  *Id*. Plaintiff further alleges that Defendants "knew about and ratified . . . the formation of
3  welcoming committees, . . . which essentially served as a roving gang that . . . instigated
4  fights." Opp'n at 16. However, Plaintiff offers no evidence to substantiate these
5  conclusions. It should also be noted that although Plaintiff asserts "the officers did nothing"
6  when a fight broke out, Plaintiff immediately contradicts this assertion by admitting the
7  officers "issued verbal commands to stop." *Id*.

8       Paredes was a CDCR-CEN correctional officer during the shift Plaintiff's altercation
9  occurred. SAC ¶ 5. Plaintiff alleges Paredes "witnessed an estimated four fights" between
10 inmates from Facility E and inmates transferring from Facility A, and "knew that there was
11 a fair chance of [sic] fight taking place." Opp'n at 17. Plaintiff further alleges officers
12 created a communication system with Facility E inmates. *Id*. at 17-18. If a transferring
13 inmate was escorted by an officer, it was a signal to fight, but if the inmate was not escorted,
14 it was a signal to stand down. *Id*. at 18. However, the testimony of inmate Cody Law
15 directly contradicts how this alleged signaling system works. Law testified that although
16 he was not escorted to Facility E by officers, he nonetheless was intercepted by a group of
17 inmates who wanted to see if he was going to fight. Law Depo. at 29:10-16; 29:25-30:23,
18 ECF No. 62-14, Ex. 12.

19      In sum, Plaintiff does not provide evidence that (1) Defendants were made aware of
20 Plaintiff's safety concerns regarding the transfer, (2) the substantial risk of harm to Plaintiff
21 was obvious, nor that (3) Defendants were exposed to evidence that the substantial risk of
22 inmate attacks was longstanding or well-documented. *Farmer*, 511 U.S. at 842-43. Rather,
23 Plaintiff's evidence is speculative, inconsistent, and inconclusive. Although the evidence
24 may establish Defendants suspected Plaintiff would be attacked, "mere suspicion" is
25 insufficient to establish deliberate indifference. *Berg*, 794 F.2d at 459. The evidence does
26 not establish Defendants were "subjectively aware of a substantial risk of serious harm" to
27 Plaintiff, nor "disregard[ed] that risk by failing to respond reasonably." *Wilk*, 956 F.3d at
28 1147. Deliberate indifference is necessary to prove Plaintiff's § 1983 Eighth Amendment

claim, *Cortez*, 776 F.3d at 1050, and Plaintiff fails to establish this essential element. *Celotex*, 477 U.S. at 322-23. Plaintiff fails to raise a genuine issue of material fact as to deliberate indifference.

Therefore, the Court **GRANTS** summary judgment for Defendants Acevedo, Marrs, and Paredes as related to Eighth Amendment deliberate indifference.

### B.  Supervisor Liability

Although generally, there is no *respondeat superior* liability under § 1983, a supervisor is liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations, or knew of the subordinates' violations and did not try to prevent them. *Vazquez v. County of Kern*, 949 F.3d 1153, 1166 (9th Cir. 2020). There must be "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (internal quotation marks and citation omitted). Causal connection may be established when a supervisor initiates, or knowingly refuses to terminate, a series of acts by others which the supervisor knows, or reasonably should know, would cause others to inflict constitutional harm. *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018); *Starr v. Baca*, 652 F.3d 1202, 1207-08 (9th Cir. 2011). A supervisor may be liable in an individual capacity for (1) their own culpable action or inaction in the training, supervision, or control of subordinates; (2) for acquiescence in the constitutional violation; or (3) for conduct showing a "reckless or callous indifference to the rights of others." *Id*.

Inadequate training may serve as the basis for a § 1983 claim only when the failure to train amounts to deliberate indifference, meaning a conscious or deliberate choice on the part of a municipality. *Flores v. County of Los Angeles*, 758 F.3d 1154, 1158 (9th Cir. 2014). The same standard applies to supervisory officials sued in their individual capacity. *Id*. at 1158-59. The supervisor must have been "deliberately indifferent to the need to train subordinates, and the lack of training actually caused the constitutional harm or deprivation of rights." *Id*. at 1159. A plaintiff must allege facts showing that a deficient training program would cause subordinates to violate constitutional rights, and the supervisor

disregarded this known or obvious consequence. *Id*. "Similarly, a failure to supervise that is sufficiently inadequate may amount to deliberate indifference." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (internal quotation marks and citation omitted). However, alleging mere negligence in training or supervision is insufficient. *Id*.

Acquiescence may include when a supervisor implements a deficient policy that is the "moving force" behind the constitutional violation. *Starr*, 652 F.3d at 1208. A plaintiff who alleges supervisor liability based on policy implementation must name a specific policy, custom, or event that led to the constitutional violation. *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012). General allegations without specificity are insufficient. *Id*.

Plaintiff alleges that, in violation of the Eighth Amendment, Defendants Acevedo, Carranza, Castillo, and Valencia (1) engaged in, condoned, ratified, and failed to properly investigate or discipline CDCR employees for incidents of excessive, unreasonable, and unjustified force; (2) improperly and inadequately trained and supervised officers and failed to adopt or enforce policies and procedures for the proper training and supervision of officers; (3) inadequately investigated and failed to adopt or enforce rules, regulations, policies, and procedures for the proper investigation of a response to inmate complaints about officer misconduct; and (4) were deliberately indifferent to the violence within the MSF. SAC ¶¶ 71-72. Plaintiff alleges these actions caused him physical and economic harm. *Id*. at ¶ 77. Defendants dispute these allegations in their motion. Mot. at 20-24.

### 1. Defendant Acevedo

Acevedo argues there is no evidence he was responsible for training Paredes and Marrs. Mot. at 24. Plaintiff does not address Defendant's argument. *See* Opp'n at 19-24. Thus, Plaintiff has abandoned this claim as related to Acevedo. *Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) ("[Plaintiff] abandoned her other two claims by not raising them in opposition to [Defendant's] motion for summary judgment").

Therefore, the Court **GRANTS** summary judgment for Defendant Acevedo as related to supervisor liability.

//

### 2. Defendant Castillo

Castillo was the Associate Warden over CDCR-CEN Complex I from August 2020 to approximately April 2022. Decl. Castillo, ECF No. 55-3 at ¶ 2. Plaintiff alleges Castillo was responsible for inmate safety and was "deliberately indifferent to the ongoing incidents of violence in the MSF and failed to prevent harm to Plaintiff." SAC ¶ 11. Plaintiff alleges Castillo was "aware of violence occurring in Facility E," "aware of the fights taking place during the aforementioned transfer process," "took no action to ensure the safety of the inmates," and "made no recommendations about preventing the fights." Opp'n at 20-21.

Castillo oversaw the planning, organization, operations, and activities of Facilities A and B. Decl. Castillo, ECF No. 55-3. at ¶ 4. Castillo declared that while she would "occasionally review disciplinary reports generated on Facility E," she did not supervise Facility E, was not responsible for training Facility E staff, and did not investigate alleged misconduct of Facility E employees. *Id*. at ¶ 4. She also declared she had no authority to rescind the transfer program, nor the ability to implement rules to override facility program requirements. *Id*. at ¶ 5. Castillo argues there is no evidence she was responsible for training Acevedo, Paredes and Marrs. Mot. at 23. Castillo further argues there is no evidence she acquiesced in Plaintiff's alleged constitutional deprivations, nor evidence her conduct showed reckless or callous indifference. *Id*. at 24.

Plaintiff does not offer any evidence Castillo supervised Acevedo, Paredes, and Marrs. *See* Opp'n at 20-21. Plaintiff also concedes "[Castillo] did not oversee Facility E." *Id*. at 21. Plaintiff does not provide evidence Castillo initiated a series of acts she reasonably should have known would cause infliction of constitutional harm. *Rodriguez*, 891 F.3d at 798; *Starr*, 652 F.3d at 1207-08. Nor does Plaintiff provide evidence Castillo was culpable for deficient training, acquiesced in a constitutional violation, or displayed "reckless or callous indifference." *Id*. At best, Plaintiff alleges Castillo was negligent in carrying out her duties, which does not show "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Crowley*, 734 F.3d at 977. Plaintiff fails to raise a genuine issue of material fact as to causation.

Therefore, the Court **GRANTS** summary judgment for Defendant Castillo as related to supervisor liability.

### 3. Defendant Valencia

Valencia is a CDCR-CEN Correctional Sergeant who supervised Facility E during October 2020. Valencia Depo. at 10:2-3, ECF No. 62-12, Ex. 10. He supervised inmates and informed new arrivals about program expectations. *Id*. at 21:7-9; 105:3-13. Valencia also supervised and trained other correctional officers. *Id*. at 21:7-9; 21:25-22:4. Officer training included expectations for new MSF arrivals, report writing, use of force, and officer responsibilities. *Id*. at 22:5-17.

Plaintiff alleges Valencia was aware of inmate violence in Facility E and "failed to adequately train correctional officers . . . ." SAC ¶ 48. Plaintiff further alleges Valencia "failed to take affirmative actions to prevent or quell the violence in Facility E," such as discussing with supervisors about instituting additional security measures, providing officers personal alarms, or installing video cameras. Opp'n at 23. Plaintiff asserts "Valencia's indifference and failure to discharge her [sic] duty to protect inmates from harm ultimately resulted in Mr. Torres sustaining serious bodily injuries." *Id*. at 24.

Valencia argues there is no evidence he "had the authority to make such recommendations, or that his failure to do so amounted to deliberate indifference." Reply at 9. Plaintiff does not offer evidence showing the Defendants' training program was deficient, nor evidence a lack of training would cause subordinates to violate inmates' constitutional rights, nor evidence Valencia disregarded such an obvious consequence. *Flores*, 758 F.3d at 1159. Plaintiff does not provide evidence Valencia acquiesced in a constitutional violation, nor "reckless or callous indifference." *Rodriguez*, 891 F.3d at 798; *Starr*, 652 F.3d at 1207-08. Further, Plaintiff does not allege Valencia implemented a deficient policy that was the moving force behind the alleged constitutional violation. *Starr*, 652 F.3d at 1208.

//
//

As with Castillo, Plaintiff at best alleges Valencia was negligent in carrying out his duties, which is insufficient. *Crowley*, 734 F.3d at 977. Plaintiff fails to raise a genuine issue of material fact as to causation.

Therefore, the Court **GRANTS** summary judgment for Defendant Valencia as related to supervisor liability.

### 4. Defendant Carranza

Carranza was the Correctional Captain over Facilities C, D, and E in 2020. Decl. Carranza, ECF No. 55-2 at ¶ 3. Plaintiff alleges Carranza was responsible for inmate safety, the training and supervision of correctional officers, and was "deliberately indifferent to the ongoing incidents of violence in the MSF and failed to prevent harm to Plaintiff." SAC ¶ 12. Plaintiff alleges Carranza was aware of the fights involving transferring inmates, took no meaningful action to prevent them, and never attempted to decrease the risk of inmate violence, ultimately resulting in Plaintiff's harm. Opp'n at 22.

Carranza argues Plaintiff must establish she was responsible for training, knew her inactions could cause Plaintiff harm, and that her inactions did cause Plaintiff harm. Mot. at 22; Reply at 8 (citing *Edgerly v. City & County Of S.F.*, 599 F.3d 946 (9th Cir. 2010)). In *Edgerly*, the court affirmed dismissal of supervisor liability claims for lack of causation. *Edgerly*, 599 F.3d at 961-62 ("[n]or could a reasonable trier of fact find that a sufficient causal connection existed;" "[Defendant] was not responsible for station policy;" "[n]or do the facts suggest that [defendant] provided any training . . . or was responsible for providing formal training to any officers.") Carranza argues "Plaintiff has at best established negligence." Reply at 8. However, applying the *Edgerly* court's reasoning to this case leads to a different result.

Carranza declared she was responsible for "ensur[ing] that everything in that facility is run based on what we have in place of policies or procedures or programs." Carranza Depo. at 44:2-11, ECF No. 62-13, Ex. 11. "If changes need[ed] to be made," she was part of the decision-making and implementation process. *Id*. at 44:11-16. Carranza would also

1  frequently tour the facilities, "making sure that everything is running appropriate, safely,
2  no security issues, living conditions are sanitary." *Id*. at 44:18-45:9.

3      Carranza admitted to being informed by facility supervisors of fights occurring in Facility E. Carranza Depo. at 47:15-22, ECF No. 62-13, Ex. 11. She also admitted to being aware of fights between inmates being transferred from Facility A to Facility E. *Id*. at 48:2-4. Carranza described the number of fights between transferring inmates as "common" and "more than few." *Id*. at 49:8-14. When asked if she would advise her lieutenant to provide staff training because of a particular problem, she stated yes. *Id*. at 64:2-14. An example of such a problem was unsecured housekeeping items. *Id*. at 64:20-24. When asked if she directed her lieutenant to train staff on "any aspects of inmate safety," Carranza stated, "not to my recollection." *Id*. at 64:25-65:2. When asked if, after learning about the fights involving inmate transfers, she directed her lieutenant "through any kind of training," Carranza stated no. *Id*. at 65:3-65:7. When asked if she initiated "any trainings to fix any potential problems involving inmate violence" as related to inmates transferring from Facility A to Facility E, Carranza stated no, "I don't remember any training that I would have provided." *Id*. at 65:14-20.

    Carranza managed Facility E and was responsible for various supervisory duties, including decision-making, facility observation, and the training and supervision of subordinate staff. She was aware of commonly occurring violence between transferring inmates, but failed to train staff or suggest policies to prevent that violence, despite having the authority to do so. When viewing the evidence in the light most favorable to the nonmoving party, *Fontana*, 262 F.3d at 876, a reasonable jury could find Carranza was "deliberately indifferent to the need to train subordinates, and the lack of training actually caused the constitutional harm or deprivation" of Plaintiff's rights. *Flores*, 758 F.3d at 1159. Thus, Carranza could be found liable as a supervisor for "inaction in the training, supervision, or control of subordinates." *Rodriguez*, 891 F.3d at 798; *Starr*, 652 F.3d at 1207-08.

//

Therefore, the Court **DENIES** summary judgment for Defendant Carranza as related to supervisor liability.

### C. Bane Act

The Bane Act, California Civil Code §52.1, "provides a cause of action for violations of a plaintiff's state or federal civil rights committed by threats, intimidation, or coercion." *Reese v. County of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018) (internal quotation marks and citations omitted). The Bane Act does not require "the threat, intimidation or coercion element of the claim to be transactionally independent from the constitutional violation alleged," but there must be "a showing of the defendant's specific intent to violate the plaintiff's constitutional rights." *Rodriguez*, 891 F.3d at 802 (citing *Reese*, 888 F.3d at 1042-43) (internal quotation marks omitted). Specific intent is a two-part inquiry determining whether: (1) the constitutional right is "clearly delineated and plainly applicable under the circumstances of the case;" and (2) the defendant committed the alleged violation "with the particular purpose of depriving" the plaintiff of the constitutional right. *Sandoval v. County of Sonoma*, 912 F.3d 509, 520 (9th Cir. 2018). So long as both elements are met, reckless disregard of the constitutional right can be sufficient to establish specific intent. *Id*.

Acevedo, Marrs, and Paredes argue they are entitled to summary judgment for the same reasons stated for Plaintiff's first cause of action. Mot. at 31. Defendants further argue there is no evidence of the specific intent element required by the Bane Act. *Id*. For reasons provided earlier, *supra* § III-A, Plaintiff fails to raise a genuine issue of material fact regarding his Eighth Amendment claim. Thus, Plaintiff fails to establish the constitutional right is "clearly delineated and plainly applicable under the circumstances of the case." *Sandoval*, 912 F.3d at 520.

Therefore, the Court **GRANTS** summary judgment for Defendants Acevedo, Marrs, and Paredes as related to the Bane Act.

//
//

### D. Qualified Immunity

Qualified immunity protects government officials from civil liability when the official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Longoria v. Pinal County*, 873 F.3d 699, 704 (9th Cir. 2017) (citing *Pearson v. Callahan*, 555 U.S. 223, 241 (2009)). The doctrine exists to balance the need to hold officials accountable while shielding them from mistakes in judgment, whether of law or fact, when they perform their duties reasonably. *Id.* (internal quotations and citations omitted). Courts use a two-part test determining whether (1) there was a violation of a constitutional right and (2) that right was clearly established at the time of the violation. *Id.* The first prong is a fact-based inquiry taken in the light "most favorable to the party asserting the injury." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second prong is a "question of law that only a judge can decide." Rodriguez, 891 F.3d at 795 (internal quotation marks and citation omitted). Courts have discretion to decide, based on the circumstances of the case, which of the two prongs to analyze first. *Pearson*, U.S. 555 at 236.

All Defendants argue they are entitled to qualified immunity. Mot. at 32. Because the Court finds Acevedo, Castillo, Marrs, Paredes, and Valencia entitled to judgement as a matter of law on the merits of Plaintiff's Eighth Amendment claims, the Court also finds the facts alleged do not show these Defendants committed a constitutional violation. *Saucier*, 533 U.S. at 201. Thus, Defendants Acevedo, Castillo, Marrs, Paredes, and Valencia are entitled to qualified immunity. *Longoria*, 873 F.3d at 704.

Regarding Carranza, the law is clearly established, *supra* § III-B, that an official is liable for inaction in the training, supervision, or control of subordinates, when such inaction causes constitutional harm. *Flores*, 758 F.3d at 1159; *Rodriguez*, 891 F.3d at 798; *Starr*, 652 F.3d at 1207-08. Taking the facts in the light most favorable to Plaintiff, *supra* § III-B-4, a jury could find Carranza violated clearly established constitutional rights of which a reasonable official in her position would have known. *Longoria*, 873 F.3d at 704. Thus, Defendant Carranza is not entitled to qualified immunity. *Id.*

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** summary judgment for Defendants Acevedo, Castillo, Marrs, Paredes, and Valencia. For the reasons discussed above, the Court **DENIES** summary judgment for Defendant Carranza and finds that she is not entitled to qualified immunity.

**IT IS SO ORDERED.**

Dated: March 11, 2025

Honorable James E. Simmons, Jr.
Unites States District Judge